# CHARLESTON.

## HAYS, AD'MR. *et al. v.* HARRIS, *et al. Trustees.*

Submitted September 5, 1912.    Decided October 21, 1913.

1. WILLS—*Charters—Residuary Clause—Construction—Conveyance.*

  Andrew G. Clark died in 1902, leaving a will, the residuary clause of which reads as follows, viz:

  "All the residue and remainder of my estate real and personal of which I shall die seized and possessed, or to which I may be entitled at the time of my decease my executors will convert into money as soon as may be without sacrifice and hand over to Drs. T. A. Harris, W. N. Burwell, John H. Kelly, T. B. Camden and W. H. Sharp, in trust, for the purpose of purchasing the Gale property at the Eastern end of Market Street, or other suitable property for the establishment of a City Hospital. The amount of this Hospital bequest I suppose will be about Ten Thousand dollars. It is the desire of the testator that the sick poor should be treated without charge or with as little expense as possible—though so far as the testator is concerned, the plans, management and conduct of the Hospital are left to the judgment and *discression* of the above named Trustees. It may be that others will contribute additional sums so as to place the institution on a larger and more useful scale."

  The estate was fully administered and the residuum of funds turned over to the trustees who have not invested it in the purchase of a building or ground for a hospital, but have husbanded it and allowed it to accumulate, until it now amounts to about $40,000.00. The executors having died, an administrator *c. t. a.* was appointed, who united with the heirs at law and distributees of testator in bringing this suit against the trustees to have the trust declared void for indefiniteness as to the beneficiaries, and for an accounting to them of the funds. *Held:*

  I.    That said residuary clause created a benevolent or charitable trust, valid under section three of chapter fifty-seven of the Code.

  II.    That said statute is a restoration, *pro tanto*, of charitable trusts.

III.   That the word *conveyance*, as used in said statute, compre-
hends a devise.

IV.   That it is an essential element of a benevolent or charitable
trust that the individual beneficiaries be indefinite.

V.   That the purpose of the bounty and the class of persons to
be benefited alone need be definite.

VI.   That the words ''sick poor'' sufficiently define a class of
persons intended as the object of testator's bounty.

VII.   A trust may be created by precatory words clearly expressive
of testator's desire.   (p. 18).

2.   CHARITIES—*Trusts in Personal Property.*
Section ten of chapter fifty-seven by clear and necessary implica-
tion, authorizes the giving of personal property in trust for benev-
olent purposes.   (p. 28).

3.   STATUTES—*Construction.*
Statutes relating to the same subject, whether passed at the same
or different times, must be read and construed together.   (p. 28).

4.   CHARITIES—*Trustee—Right to Hold Title.*
The holding of title to land in trust for a benevolent purpose is
not a prerequisite to the taking of title to personal property by
trustees upon like trust.   (p. 28).

5.   JUDGMENT—*Former Adjudication—Estoppel.*
A former adjudication, to work an estoppel on parties and privies,
must be in relation to the same cause of action.   (p. 29).

(MILLER, JUDGE, absent).

Appeal from Circuit Court, Wood County.

Bill by Abijah Hays, administrator, etc., and others, against Thomas A. Harris and others.   From a decree for plaintiffs, defendants appeal.

*Reversed and Dismissed.*

*Smith D. Turner* and *H. P. Camden,* for appellants.

*Chas. E. Hogg,* and *A. D. Preston,* for appellees.

WILLIAMS, JUDGE:

Andrew G. Clark died testate; and, after giving pecuniary legacies to a number of his friends and relatives, made the following bequest:

"All the residue and remainder of my estate, real and personal of which I shall die seized and possessed, or to which I

may be entitled at the time of my decease my executors will
.convert into money as soon as may be without sacrifice and hand
over to Drs. T. A. Harris, W. N. Burwell, John H. Kelly, T. B.
Camden and W. H. Sharp, in trust, for the purpose of pur-
chasing the Gale property at the Eastern end of Market Street,
·or other suitable property for the establishment of a City Hos-
pital. The amount, of this hospital bequest I suppose will be
about ten thousand dollars. It is the desire of the testator that
.the sick poor should be treated without charge or with as little
.expense as possible—though so far as the testator is concerned,
·the plans, management and conduct of the hospital are left to
the judgment and *discression* of the above named trustees. It
may be that others will contribute additional sums so as to place
the institution on a larger and more useful scale."

He appointed J. B. Neal and Kinnard Snodgrass his execu-
tors, and they qualified as such, and have fully administered the
estate. After payment of funeral expenses, debts and legacies,
they turned over to the trustees named in the will the sum of
$26,308.56. They have expended no part of the fund in the
purchase of ground, or building, for a hospital, but have allowed
it to accumulate, until it amounted to $38,137.42, on the
6th of September, 1911, the date of the decree appealed from.
Both executors having departed this life, Abijah Hays was
appointed administrator *c. t. a.,* and he and testator's heirs at
law and distributees have joined in the present suit against the
surviving trustees in their official capacity and as individuals,
brought to annul the residuary clause of the will, and to compel
the trustees to account to the distributees for the fund. The
court decreed relief, according to the prayer of the bill, and the
trustees have appealed.

Testator has created a benevolent or charitable trust, the
validity of which depends upon the statutes of this state, found
in chapter 57, Code (1906), and particularly upon sections 3
.and 10 of that chapter. In the year 1792 the Legislature of
·Virginia repealed all English statutes, theretofore in operation
in that state. 43 Elizabeth, ch. 4, relating to the adminis-
tration of charitable trusts by courts of equity, was thereby
repealed. The first case which thereafter arose, involving the

Virginia law respecting charitable trusts, was *Baptist Association* v. *Hart's Executors,* which was brought in the Federal court for the district of Virginia, and appealed to the Supreme Court of the United States, and there decided in 1819, (4 Wheat. 1, 4 Law Ed. 499). It involved the validity of a bequest made to an unincorporated religious association, or society, "to be a perpetual fund for the education of youths of the Baptist denomination, who shall appear promising for the ministry." The court held, in an opinion prepared by Chief Justice Marshall, that, "Charitable bequests, where no legal interest is vested, and which are too vague to be claimed by those for whom the beneficial interest was intended, can not be established by a court of equity, either exercising its ordinary jurisdiction, or enforcing the prerogative of the king as *parens patriae,* independently of the Statute of 43 Elizabeth." That decision, however, seems to have been rendered upon an imperfect survey of the law; and, in the famous case of *Vidol* v. *Girrard's Executors,* decided in 1844, (2 How. 127, 11 Law Ed. 205), the court, after a more thorough examination into the state of the English law prior to 43 Elizabeth, and having access then to many English chancery decisions rendered anterior to 43 Elizabeth, but not published at the time *Baptist Association* v. *Hart's Executors* was decided, in a very able and exhaustive opinion written by Justice Story, distinguished it from the case in hand, and receded from the position taken by the distinguished Chief Justice in the former case, and expressly decided that equity jurisdiction over charities was not dependent upon the statute, but that it existed and had been exercised by courts of chancery in England prior to 43 Elizabeth, and that the only effect of the statute was to furnish an ancillary remedy. That court has ever since consistently followed the principles declared in the Girrard case, except in cases arising in Virginia. The Girrard case has also been accepted by the courts of most of the states, as a correct interpretation of the English law on the subject of charities. But, in *Wheeler* v. *Smith,* 9 How. 55, 13 Law Ed. 44, a case arising in Virginia, the court adhered to the principles announced in the Baptist Association case. But it seems to have done so, more out of respect to the decision,

rendered in 1832, by the court of appeals of Virginia in *Gallego's Executors* v. *Attorney General,* 3 Leigh 450, than on account of its own decision of the Baptist Association case. It regarded the Gallego case as settling the law of that state. And the courts of Virginia and of this state have consistently followed the principles of the Gallego case, as will be seen by an examination of the following cases: *Carpenter* v. *Miller,* 3 W. Va. 174; *Brook* v. *Shacklett,* 13 Gratt. 301; *Weaver* v. *Spurr,* 56 W. Va. 95; *Seaburn* v. *Seaburn,* 15 Gratt. 423; *Bible Society* v. *Pendleton, Trustee,* 7 W. Va. 79; *Carskadon et al.* v. *Torryson et al.,* 17 W. Va. 43; *Broun* v. *Caldwell,* 23 W. Va. 187; *Wilson* v. *Perry,* 29 W. Va. 169; *Pack* v. *Shanklin,* 43 W. Va. 304. Hence, the principles of the Gallego case have become the settled law of this state, except in so far as they have been changed, or modified, by statute. It must be borne in mind, however, that at the time the Baptist Association case, and the Gallego case, were decided the state of Virginia had no statute whatever on the subject. It had not then re-enacted any statute to take the place of chapter 4, 43 Elizabeth; and, supposing equity to be powerless to administer charities, or indefinite trusts, independent of statute, the court applied to them the same strict rules of interpretation that were applicable to private trusts, requiring the beneficiaries to be definite and certain.

But counsel for appellants do not rest their case upon the common law, but upon sections three and ten of chapter 57, Code 1906. Section three reads as follows:

"3. Where any conveyance of land has been or shall be made to trustees for the use of any college, academy, high school, or other seminary of learning, or for the use of any society of free masons, odd fellows, sons of temperance or good templars, or for an orphan asylum, children's home, or other benevolent association or purpose; or if, without the intervention of trustees, such conveyance has been made since the thirty-first day of March, one thousand eight hundred and forty-eight, or shall be hereafter made for such use or purpose, the same shall be valid, and the land shall be held for such use or purpose only."

This statute was first enacted by the legislature of Virginia

in 1847-48, (ch. 105), was incorporated in the Revised Code of 1849 as Sec. 14, of Ch. 77, and has come down to us, with some verbal changes. Its purpose was evidently to validate conveyances of land, when made for any of the objects and purposes therein named. So anxious was the state to protect the enumerated charities, and to foster and encourage a spirit of benevolence and education among its citizens, that the law was made retroactive as well as prospective, provided the conveyance had theretofore been made to trustees. "Where any conveyance of land *has been* or shall be made to trustees for the use of any college," etc., it says. Conveyances, made after the statute became operative, were made valid "without the intervention of trustees." As originally enacted, it contained the words, "or any other benevolent association;" and was adopted as the law of this state without amendment, (Sec. 7, Ch. 57, Code 1868) ; and so continued until 1885, when it was amended and re-enacted, and the words "or purpose" were added; so that it now reads, "or any other benevolent association or purpose." The amendment was made, so as to include a benevolent trust, even though it may not be made for the use of any designated, or organized society of individuals, but made for the benefit of an indefinite number of unorganized persons. It is very broad in its scope, and it is only necessary to inquire, (1) whether the purpose of the gift is benevolent, and (2) whether it is definite as to the object not necessarily definite as to the individual persons to be benefitted.

It can not be doubted, that a gift made to erect a hospital, not for private gain, but for the treatment of the sick poor, without expense to them, is a benevolent gift. Webster defines the word *benevolent* as, "having a disposition to do good; possessing or manifesting love to mankind, and a desire to promote their prosperity and happiness; disposed to give to good objects; kind; charitable." By his gift, testator has certainly shown a great love for mankind and a desire to add to their comfort and happiness. In the interpretation of statutes, words must be given their popular meaning, unless there is something in the nature of the act to show that they were used in a more limited sense: *Daniel v. Simms,* 49 W. Va. 554. While the word *be-*

*nevolent* does not include all those indefinite trusts recognized in Ch. 4, 43 Eliz. as charities, still it is more comprehensive and wider in its scope of meaning than the word *charitable,* and may include what are not recognized as charities in the old English law. *Murdock* v. *Bridges,* 91 Me. 124, 39 Atl. 475; *Chamberlain* v. *Stearns,* 111 Mass. 267; *Adye* v. *Smith,* 44 Conn. 60, 26 Am. Rep. 424. It includes all gifts prompted by good will or kind feeling toward the recipient, whether an object of charity or not, and it has no legal meaning separate from its usual meaning. *Norris* v. *Thompson's Ex'rs.,* 19 N. J. Eq. 307. See also 1 Words & Phrases, 754. Benevolent charities are peculiarly favored by our Constitution and laws. Sec. 1, Art. X, Constitution, authorizes their exemption from taxation; and the Legislature has exempted from tax "property used for charitable purposes and not held or leased out for profit;  *   *   *   * all property belonging to any hospital not held or leased out for profit, houses of refuge, lunatic or orphan asylum." Sec. 57, Ch. 29, Supp. 1909 to Code.

It is necessary only that the object of a benevolent trust should be certain. To designate the individuals who are intended to be benefitted, would be to destroy its character as a charitable trust. Uncertainty as to the individual beneficiaries is a necessary characteristic of a charitable trust. 3 A. & E. E. L. (2d. ed.) 905. Says Justice Gray, in *Russell* v. *Allen,* 107 U. S. 167: "They (charities) may, and indeed must, be for the benefit of an indefinite number of persons; for if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness, which is one of the characteristics of a legal charity."

Has the testator made his charitable purpose, or object, sufficiently definite to enable his trustees to carry out his will? If he has, this is all the law requires. He first directs that a certain building, or other suitable property, be purchased for the establishment of a hospital, and then says: "It is the desire of the testator that the sick poor should be treated without charge or with as little expense as possible—though so far as the testator is concerned, the plans, management and conduct of the hospital are left to the *discression* of the above named trustees."

He does not expressly say that the property is to be held in trust for that purpose, but the words expressing his desire are sufficient, provided he has made the object of his desire sufficiently plain. "Precatory words in a will are sufficient to create a trust where the subject and the object are certain." *Harrison* v. *Harrison's Ex' rs.*, 2 Grat. 1; and *Cresap* v. *Cresap,* 34 W. Va. 310. The class of persons intended to be benfitted were the sick poor. They are a class easily ascertainable by the trustees, to whom the testator had entrusted the duty to select from among them the ones to receive his bounty, as well as the duty to manage the hospital. They were given wide latitude in regard to the number of sick poor they would treat, the manner of treating them and the charge to be made therefor, if it should be ascertained that any charge was necessary to help bear expenses of the hospital. It must be borne in mind that section three of chapter fifty-seven is a restoration, *pro tanto,* of charitable uses or trusts; and that such trusts are highly favored by the law. Therefore, testator's gift being for one of the purposes named in the statute, great liberality is allowed in giving effect to his bounty. That the "sick poor" is a sufficient designation of the class of persons to be benefitted, to make certain testator's object, is fully borne out by the following authorities:

A grant in trust "for the use and benefit of the Russell Institution of St. Louis, Missouri," was held to be a valid charitable trust, although the institution was neither established nor incorporated in the lifetime of the donor. *Russell* v. *Allen,* 107 U. S. 163, 27 Law Ed. 397.

In *Attorney General* v. *Moore's Ex'rs.,* 19 N. J. Ch. Rep. 503, a bequest, "to establish as soon as may be practicable after my decease in what is now known as the fifth ward of said City of Newark, an orphan asylum to be called St. James Roman Catholic Orphan Asylum, and also a hospital for sick and infirm persons," was held to be good as a charitable trust.

A bequest to the "mayor and corporation of the City of Philadelphia, in trust to purchase a lot of ground, and erect thereon a hospital for the relief of the indigent blind and lame,"

was held valid. *Mayor of Philadelphia* v. *Elliott et al., Ex'rs.,* 3 Rawle (Pa.) 170.

A devise and bequest of land and money to trustees, "in trust for the purpose of maintaining a home for destitute and friendless children," was held by the Supreme Court of Errors of the State of Connecticut to constitute a sufficient description of the class of persons to be benefitted. *Woodruff* v. *Marsh,* 63 Conn. 125.

"Indigent, unmarried Protestant females over the age of eighteen years, residents of Bridgeport," was held to be a sufficient description of persons intended as the beneficiaries of a charitable bequest. *Tappan's Appeal from Probate,* 52 Conn. 412.

A devise of property to a trustee in trust, "to be sold and the proceeds applied to the erection or maintenance, or both, of an orphan asylum in said city of Belleville, under the direction of and as requested by the said congregation," (St. Peters Roman Catholic Congregation of said city) was held valid as a charitable bequest. *Germain* v. *Boltes,* 113 Ill. 29.

A devise "for a home and place for the maintenance and education of poor children," was held by the supreme court of Missouri to be sufficiently definite to be enforced in equity. *Barkley* v. *Donnelly,* 112 Mo. 567.

A bequest to trustees in trust, "to provide and sustain a home for respectable, destitute, aged, native born American men and women," was held by the Supreme Court of Massachusetts to be a good charitable bequest. *Odell* v. *Odell et al.,* 10 Allen 1.

In *Gooch* v. *Ass'n. &c.,* 109 Mass. 558, it was held that "a corporation established for the support of poor and old women, which devotes all its funds to the support of such women in its home, and is no source of profit to its members, is a charitable corporation, although it requires a payment of money as a requisite for admitting a woman into its home."

Sections five and six of chapter fifty-seven, evince a clear legislative purpose to prevent the failure of benevolent trusts. Section six constitutes the trustees, "whether named in the conveyance, devise or dedication, or appointed by the court,"

a corporation, with power to transact business as such, and empowers them to perform all "acts and business pertaining to. the trust. created by any such conveyance, devise or dedication." Among the powers given, is the power to determine, in this case, how many, and what ones, of the "sick poor" it can treat; and what charge, if any, is necessary to be made to keep up expenses of running the hospital; and to determine the size and location of the hospital and its equipment, and to direct and supervise its management. By operation of the statute, the trustees named by testator, became a perpetual corporation.. Section five gives the circuit court power to remove trustees and appoint others in their places; to appoint trustees where none have been named, on the application of any person interested; and, if no person interested should make such application, then it may do so on application of the remaining trustees, if any; and finally, if no one else makes application, it provides that the prosecuting attorney of the county may do so. A more ample provision for the enforcement of charitable trusts could scarcely have been made. They were intended to prevent the failure of benevolences when there happened to be no trustees, or none willing to do his duty, or when there was no known beneficiary to apply to the court. The remedy seems to be as complete as that provided by chapter 4, 43 Elizabeth.

But counsel for appellees insist that section. three does not authorize the creation of a benevolent trust by will; they argue that, as originally enacted, Acts of Virginia 1847-8, Ch. 105, it contained the words "conveyance or devise," but that in the Revised Code of 1849, the word *devise* was dropped, and that the intention of the revisors and the legislature to prohibit devises upon such trusts was thus indicated, that there is no other apparent reason for omitting the word from the statute. But, may not the revisors have left out the word *devise,* because they considered it as unnecessary, and as being included in the meaning of the more comprehensive word *conveyance?* That conveyance does include a devise; we have no doubt. Bouvier defines *conveyance* as, "the transfer of the title of land from one person or class of persons to another." 4 A. & E. E. L. (2nd ed.) 132, defines it as: "A general word, comprehending the

several modes of passing title to real estate." In construing a Canadian statute, (3 Vict. c. 74, sec. 16), rendering valid any deed or *conveyance* that may be made for the benefit of the Church of England, provided such *deeds and conveyances* shall be made and executed six months, at least, before the death of the person conveying the same, and shall be registered not later than six months after his decease, the Court of Queen's Bench held that the word *conveyance* included a devise. *Baker* v. *Clark,* 7 U. C. Q. B. 44. Were it doubtful whether the word conveyance, as used in section three, was meant to include a devise of lands, we think this doubt is removed by the subsequent enactment of section six relating to the same subject. It reads: "The said trustees, whether named in the conveyance *devise* or *dedication* * * * * * for any of the uses or purposes mentioned in the third section of this chapter," etc. The words "devise or dedication," would here be useless, if they were not included in the meaning of the more general term *conveyance* found in the former section. Being *in pari materia* the two sections should be read and construed together. 2 Lewis' Sutherland on Statutory Construction, (2d ed.) sec. 443. Counsel rely upon *Seaburn* v. *Seaburn,* 15 Grat. 423, as authority against the construction which we have here given to the word *conveyance* found in section three. But, with much deference to the distinguished counsel, we think it is authority for, rather than against, our view. In that case the court was construing the word *conveyance,* as used in section one of chapter fifty-seven of the Code, a statute distinct from section three and relating to trusts created for the benefit of churches, religious sects, societies, congregations or denominations, as a place of worship or burial, or as a residence for a minister; and it clearly appears from that section that the word *conveyance* was therein used in its technical and narrower sense. Like section three, it is made both retroactive and prospective, but a clear purpose is indicated to make its retroactive effect more comprehensive in terms than its prospective effect, and to limit future transfers of title, for uses therein named to conveyances *inter vivos.* But, in discussing the meaning of the word conveyance, as generally understood, Judge Moncure, in his opin-

ion says: "There can be no doubt but that the word 'conveyance' in its comprehensive sense, embraces a devise." There is nothing to indicate that the word was not intended to have its popular meaning in section three, and that is the meaning we feel constrained to give it.. There seems to be no good reason for forbidding the creation of a benevolent trust by will, as well as by deed.

It is urged in brief of counsel, that the property willed was personal property; or, if originally land, that the doctrine of equitable conversion applies to it; and that the statute does not authorize the transfer. of personal property for benevolent trusts. True, section three speaks only of land which, of course, does not include personal property. But in 1852 the Legislature of Virginia passed another act, relating to personal property given in trust for any of the purposes mentioned in section three, which has come down to us with some modifications, constituting section ten of chapter fifty-seven and reading as follows: "Personal property given or acquired for any of the purposes mentioned in the third section of this chapter, shall stand vested in the trustees having the legal title to the land mentioned in said section, and be held by them as the land is held."

Standing alone, this section is incomplete. It assumes, but does not expressly say, that personal property may be given for the purposes named in section three. But the authority to do so is conferred by necessary implication; otherwise the section would be nugatory. "That which is implied in a statute is as much a part of it as what is expressed." Lewis' Sutherland, Statutory Construction (2d ed.), secs. 500 and 501. It must be read in connection with section three, and so reading it, the legislative purposes to authorize the passing of personal property upon like trusts as section three permits the transfer of land, is made plain. To avoid possible conflict between different sets of trustees, in the management of the trust, it makes the trustees of the land, if any, trustees also of the personal property given for the same purpose, notwithstanding it may have been given to a different set of trustees. For instance, if land were conveyed to certain trustees for a benevolent purpose, and some other benefactor should thereafter give personal

property for the same purpose, to other trustees, section ten would pass the title thereto to the trustees who held title to the land. But title to land in the trustees is not a prerequisite to holding title to personal property.

Shortly after the will was probated the trustees brought a suit against Neal and Snodgrass, the executors, alleging that the fund which would likely come to their hands would be insufficient to carry out the purpose of the testator in the manner indicated by his will, and prayed that the court would instruct them "as to their powers, rights and duties under the said will and to interpret the same as to whether the purchasing of the privilege of beds for the sick poor in hospitals already erected, established and equipped and invest the principal in good and safe paying interest bearing securities would meet the requirements of the said will of the said deceased, and if so, to instruct your orators as such trustees accordingly." The executors were personally served but made no appearance. The circuit court entered a decree, interpreting the residuary clause of the will relating to the trust, practically in terms of the will itself. From that decree the trustees appealed, and this court held that the plaintiffs had failed to make out a case calling for judicial construction, and reversed the decree and dismissed the bill. The court in its opinion saying: "The language of the will is free from doubt, and the intention of the testator is plainly and intelligibly expressed; and when this is so the courts will refuse to apply technical rules of construction." 61 W. Va. 1. Assuming that the property in question is personal property, counsel for the trustees now insist that the plaintiffs in the present suit are estopped, by that adjudication, to set up title to the fund, on the ground that their interest in the fund was fully represented by their privies in estate, the executors, and that the dismissal of the trustees' bill, for the reasons stated in the opinion of this court, was an adjudication of the rights which they now assert. But we do not so understand the effect of that decision. This suit presents a different cause of action. The former suit did not put in issue the validity of the devise which is made the subject of the present suit, but was simply a suit brought for the construction of the will, the language of which

this court held to be too plain to warrant construction, and for that cause dismissed the bill. A former decree or judgment, to work an estoppel upon parties and their privies, must be concerning the same subject matter. *Hudson* v. *Iguano Land & Mining Co.,* 71 W. Va., 402, 76 S. E. 797. Nothing was alleged in the bill in the former suit that required the executors, or which would have required these plaintiffs, had they been made parties, to defend. The matter here litigated was not germane to that suit, and could not have been made a defense to it.

We have carefully considered the many West Virginia cases cited in brief of counsel, and relied on to sustain their contention that the devise is void for indefiniteness as to the beneficiaries, and find that they pertain to section one, and not to section three, of chapter fifty-seven. They involve grants, devises or bequests of money or property for the use of churches and unincorporated religious bodies, for the propagation of the gospel according to some particular religious creed, or for a burial ground. They are not authority for the determination of the question here presented, which concerns the validity of a devise of property, or funds, to trustees, who are made by law a body corporate, for a "benevolent purpose," particularly defined by the testator, and, in our opinion, constituting a charitable trust authorized by sections three and ten of chapter fifty-seven.

For the reasons herein given, we reverse the decree appealed from and will enter an order here dismissing plaintiffs' bill.

*Reversed and Dismissed.*