THE AUTHORS CLUB, Plaintiff, *v.* LUCIAN S. KIRTLAND and Others, as Members of the Finance Committee of the Authors Club, in Possession and Control of the Carnegie Fund, and JOHN J. BENNETT, JR., as Attorney-General of the State of New York, Defendants.

First Department, June 23, 1936.

*Raymond F. McCauley* of counsel [*Warren P. McGoldrick* with him on the brief], for the plaintiff.

*Joseph Stern* of counsel [*Jerome N. Sewards* with him on the brief], for the defendants.

*Robert P. Beyer, Assistant Attorney-General,* of counsel [*Henry Epstein, Solicitor General,* with him on the brief; *John J. Bennett Jr., Attorney-General*], for the defendant John J. Bennett, Jr., Attorney-General.

*M'Cready Sykes*, for Lawson Purdy, Edwin R. A. Seligman, Stuart Henry, William Adams Brown and M'Cready Sykes, *amici curiæ.*

O'MALLEY, J. The question presented by this submitted controversy is whether donations to the plaintiff in the sums of $10,000, $10,000 and $30,000, respectively, and a bequest of $200,000 from the same source have been made the subject of a trust. If so, the further question is presented, whether the income therefrom may be diverted in part to the general obligations of the plaintiff, or must be restricted to the charitable purposes of the trust.

The articles of plaintiff's incorporation or charter provided that the purpose for which it was organized was generally for " literary and library purposes, and the promotion of social intercourse among authors," and the constitution stated that it was also founded for " the welfare of the profession of authorship."

Under date of March 12, 1890, the late Andrew Carnegie made his first gift of $10,000 in bonds to the plaintiff. As expressed in his letter it was his hope that the club would accept the gift

and use the revenue " for literary purposes within the meaning of the articles of incorporation." This letter was a modification of an earlier one, wherein the donor had expressed the wish that the revenue accruing should be used " in such manner as the Club may deem best for the relief of literary Men or Women or their families." The letter first above mentioned was acknowledged by the plaintiff with thanks for the change in the terms of the gift, so that any possible embarrassment in its use might be avoided.

On April 3, 1890, the plaintiff adopted a resolution accepting the gift and declaring that it was " set apart from the other funds of the Club as a special fund for literary purposes (including assistance to distressed members of the Club or their families) * * * and that no portion of principal or income shall be used for ordinary Club expenditures."

On February 26, 1903, a second gift of $10,000 in securities was given by Mr. Carnegie. While the record discloses no letter from him, a resolution was again adopted by the plaintiff which stated that the income of the separate and special fund known as the " Carnegie Fund " should be reserved " for the benefit of persons * * * whose literary productions conform to the standard required for admission to the Club. This condition may cover the cases of the members of the immediate family of the person recently deceased whose productions conform to the required standard."

On February 20, 1908, the third gift of $30,000 was made. With respect to this a resolution was adopted conveying thanks to the donor " for his generous addition of $30,000 to the Authors Club Carnegie Fund, and to assure Mr. Carnegie of the earnest purpose of the Club and the executive council to administer the fund in accordance with the compassionate purpose with which he created it."

On August 28, 1919, plaintiff received a further sum from Mr. Carnegie under his will as expressed therein. " To the relief fund of The Authors Club of New York, I give $200,000."

As revised May 29, 1924, plaintiff's constitution provided as follows:

Section 20. " The Trustees of the Carnegie Fund shall have charge of all the property constituting the said fund, the proper investment and conservation thereof, and the distribution of the income therefrom in accordance with the purpose of the donor, namely, the use of the income therefrom for the assistance of authors or their families in pecuniary need. All of said property shall be kept in the custody of a Trust Company duly selected by

the Trustees; and the action and signature of at least two Trustees shall be required for all payments and for all sales or purchases of securities, and for all withdrawals from the Trust Company. The Trustees shall report quarterly to the Council and to the annual meeting of the Club, the status and condition of the property and funds in their charge and the amount of the payments made therefrom. The Trustees shall determine the persons to receive and the amounts to be paid out of the income of the said fund in accordance with its purpose, but the names of the beneficiaries shall at all times be kept secret, except as provided elsewhere in this constitution."

This controversy is occasioned by an amendment to the constitution under date of October 17, 1935, which permits the plaintiff to use a portion of the income from the Carnegie Fund to defray general expenses. This amendment, after omitting provisions for the three trustees of the Carnegie Fund and placing the control thereof in the hands of the finance committee, reads:

Section 3 of article VI of the revised constitution:

" The annual income of the said Fund shall be used for the maintenance or increase of the principal of the Fund, the relief of needy authors, and the payment of indebtedness or current expenses of the Club, or for any of the aforesaid purposes, in such proportions or amounts as the Executive Council, on the recommendation of the Finance Committee, shall from time to time authorize and direct: Provided always, that only the income of the Fund shall be so used and that the principal of the fund shall in no case be impaired; and provided also that the amount to be used for current Club purposes shall not exceed twenty five per cent of the yearly income in any one year."

It appears that since 1934 the plaintiff has not had sufficient funds with which to meet its obligations without resort to the use of the Carnegie Fund, but that the finance committee has refused to use any portion of the income thereof for the needs of the plaintiff itself.

A reading of the words of gift and the resolutions passed by the plaintiff with respect thereto leads to the conclusion that these gifts were for a trust purpose. Whether the plaintiff had authority to act as trustee is immaterial. It accepted these gifts with their trust purpose and restricted use. It should be barred and estopped from asserting that it now could use them without any restriction and for other than trust purposes.

Furthermore, assuming without conceding that the gifts to the plaintiff did not come within the category of trust funds, the same result would necessarily be reached upon the facts stipulated. The

plaintiff itself set aside the amount of these various gifts from time to time in a separate trust fund, the income of which was to be used for specifically mentioned trust purposes with the proviso that the corpus should remain unimpaired and the income not used for the general purposes of the plaintiff.

From this aspect the plaintiff itself was the donor of the trust fund and, again, there could be no diversion of the income from the specified trust purposes.

The trust was valid as its purposes were charitable and benevolent. (*Matter of Robinson*, 203 N. Y. 380; *Matter of Cunningham*, 206 id. 601; *Matter of MacDowell*, 217 id. 454; *Butterworth* v. *Keeler*, 219 id. 446; *Matter of Frasch*, 245 id. 174.) There being no reservation in the donor or any provision for revocation, the interest of the donor and donee was permanently excluded and there could be no revocation by their acts alone. (*Associate Alumni* v. *Theological Seminary*, 163 N. Y. 417; *Matter of Swan*, 237 App. Div. 454; affd., *sub nom. Matter of St. John's Church of Mt. Morris*, 263 N. Y. 638; *Stewart* v. *Franchetti*, 167 App. Div. 541.)

It follows, therefore, that judgment should be directed in favor of the defendants, but without costs.

MARTIN, P. J., McAVOY, TOWNLEY and GLENNON, JJ., concur.

Judgment unanimously directed in favor of the defendants, without costs. Settle order on notice.