THE GRAND LODGE OF THE INDEPENDENT ORDER OF ODD FELLOWS OF WEST VIRGINIA, *et al.*

*v.*

OTWAY GUNNOE, *et al.*

(No. 12876)

Submitted May 26, 1970.          Decided July 17, 1970.

Petition for Rehearing August 13, 1970.

Rehearing Denied November 16, 1970.

*Carney M. Layne,* for appellants.

*Greene, Ketchum, Baker & Pauley, Lawrence L. Pauley,* for appellees.

HAYMOND, JUDGE:

In this declaratory judgment proceeding, instituted in the Circuit Court of Cabell County in September 1967, the plaintiffs, The Grand Lodge of the Independent Order of Odd Fellows of West Virginia, a corporation, Harry K. Anderson, succeeded by E. Garland Ray, as Grand Master of the Independent Order of Odd Fellows of West Virginia, who sues in behalf of himself as a member and as Grand Master for all other members of the Independent Order of Odd Fellows of West Virginia similarly situated, Meril E. Peak, Clinton W. Fiedler, Edwin C. Runner and Mike Casey, as Trustees, alleged to be four of the five members of the Board of Trustees of the Odd Fellows Home, a corporation, and the Board of Trustees of the Odd Fellows Home, a corporation, seek a declaration that the plaintiffs Meril E. Peak, Clinton W. Fiedler, Edwin C. Runner and Mike Casey and the defendant P. K. Martin are the rightful trustees composing the Board of Trustees of the Odd Fellows Home, a corporation, and to

require the defendants, Otway Gunnoe, R. A. Roller and P. K. Martin, alleged to be former trustees of the Board of Trustees of the Odd Fellows Home, a corporation, and John E. Lake and Earl J. Woodrum, alleged to be purported trustees, to account for all property belonging to the board of trustees in their custody as such trustees and to deliver all such property and records to the plaintiffs Meril E. Peak, Clinton W. Fiedler, Edwin C. Runner, Mike Casey and the defendant P. K. Martin as members of the Board of Trustees of the Odd Fellows Home, a corporation.

The case was tried upon the complaint of the plaintiffs and its several exhibits, the answer and counterclaim of the defendants, the reply of the plaintiffs and its exhibits to the answer and counterclaim of the defendants, the petition of the plaintiffs and the answer of the defendants to the petition, and various motions, including separate motions by the plaintiffs and by the defendants for summary judgment in behalf of each movant. By its final judgment rendered November 15, 1968, the circuit court denied the motion of the plaintiffs for summary judgment and granted the motion of the defendants for summary judgment and dismissed this action at the cost of the plaintiffs. From that judgment this Court granted this appeal on September 29, 1969 upon the application of the plaintiffs.

The controlling question for decision is whether the plaintiff, The Grand Lodge of the Independent Order of Odd Fellows of West Virginia, a corporation, herein sometimes referred to as the grand lodge, by virtue of certain resolutions adopted by it from time to time and certain action taken by the Board of Directors of the Odd Fellows Home, a corporation, herein sometimes referred to as the board of directors, pursuant to such resolutions and under the applicable sections of Articles 2 and 3, Chapter 35, Code, 1931, divested itself of power and authority to create the Board of Trustees of the Odd Fellows Home, a corporation, herein sometimes referred to as the board of trustees, and to appoint such trustees, or has retained and now possesses such power and authority.

The material facts are not disputed and the question for decision is a question of law.

The grand lodge is a statutory benevolent, charitable and fraternal association and was incorporated as such December 26, 1879. It is the highest authoritative organization in the Independent Order of Odd Fellows in West Virginia and is composed of representatives of approximately 145 local lodges which together have about 7,000 to 8,000 members. In 1909 the grand lodge established the Odd Fellows Home which is located in Elkins, West Virginia. It was created pursuant to Section 1, Article 3, Chapter 35, Code, 1931, for the care and support of orphans and widows of deceased members and of disabled and aged members and to acquire and hold real estate and personal property needed in the administration of the affairs of the home. The home is owned by the grand lodge and is managed by a Board of Directors of the Odd Fellows Home, composed of members appointed by the grand lodge, which is charged with the management and supervision of the home. By virtue of Sections 3 and 4, Article 3, Chapter 35, Code, 1931, the Board of Directors of the Odd Fellows Home is itself a statutory corporation and shall be known by its corporate name.

On December 21, 1925, pursuant to a resolution of the grand lodge, the Odd Fellows Home Endowment Board, which consists of the members of the board of directors of the Odd Fellows Home, was issued a certificate of incorporation for the purposes, among others, of receiving, holding and investing all gifts, donations, bequests and devises for the creation of an endowment fund for the Odd Fellows Home, of collecting the income from such fund and expending it for the support and maintenance of the home and its residents, and of doing all things necessary and proper for the creation and perpetuation of the fund and for its investment and the expenditure of its proceeds incidental to and in connection with such fund.

After a ruling by the Tax Commissioner of West Virginia that the property held by the Odd Fellows Home Endowment Board, a corporation, hereinafter sometimes referred to as the endowment board, was not entitled to tax exemption, and for the purpose of obtaining the right to such exemption the grand lodge on October 12, 1938 at its annual session adopted

a resolution, prepared and recommended by its Committee on Legislation, which provided for the creation of a board of trustees of the Odd Fellows Home and the conveyance of the property held by the Odd Fellows Home Endowment Board to the Board of Trustees of the Odd Fellows Home. The pertinent provisions of that resolution are:

"That the Board of Directors of Odd Fellows Home be and it is hereby authorized, empowered and directed to select, appoint and designate three persons, members of said board of directors, to be trustees and to be known as the Board of Trustees of Odd Fellows Home, for the purposes and to have the powers and duties hereinafter set out.

"That said Odd Fellows Home Endowment Board, by its proper corporate authorities, be and it is hereby authorized, empowered and directed by apt and proper deed to convey, or cause to be conveyed, to said Board of Trustees of Odd Fellows Home all of the following described real estate, now held by said corporation as part of said endowment fund." The property to be conveyed was set out in detail in the resolution.

The same resolution also provided: "That said trustee, and their successors, when so selected, appointed and designated, shall become a corporation under the terms and provisions of Code of West Virginia 35-2-6 * * *, by the name of 'The Board of Trustees of Odd Fellows' Home' * * *." The resolution further provided that in addition to the powers conferred upon such trustees by statute the trustees were authorized to take, receive and hold legal title to and administer real estate, to be conveyed to the Odd Fellows Home Endowment Board and all other real estate to be thereafter conveyed to the trustees for the use, benefit and advancement of the Odd Fellows Home, its wards, inmates and residents; to rent or lease the real estate; to collect, receive, administer and disburse the proceeds of such renting and leasing; to keep and maintain the buildings and improvements upon the real estate in good condition and repair; to provide adequate fire and other casualty insurance upon buildings and improvements; to do such other acts as may be necessary or expedient for the proper and

prudent care and management of the real estate; to account for and pay the net income derived from renting and leasing the foregoing properties to the Board of Directors of Odd Fellows Home, to be used by that board for religious, charitable and educational purposes in the care, education, training and maintenance of the wards, inmates and residents of the home, but no part of the net income so derived shall be used for private purposes or profit; to sell or convey all or any part of the real estate; to account for and pay to the Odd Fellows Home Endowment Board the net proceeds of any sale of the real estate to be invested and administered by the endowment board as part of the endowment fund of the Odd Fellows Home; and to provide and pay the reasonable cost of clerical or professional aid or assistance required by the board of trustees in the proper discharge of its duties.

The resolution further provided that the board of trustees may elect one of its members as chairman and another as secretary and treasurer and make such rules and regulations with respect to its operation and the property held by it as the trustees may deem necessary or expedient; that if a vacancy should occur in the membership of the board of trustees the remaining two members may select and appoint a qualified person to fill the vacancy; and that if more than one vacancy exists at the same time the Board of Directors of the Odd Fellows Home shall forthwith select, appoint and designate qualified persons to fill the vacancies.

By an instrument in writing signed by the president and the secretary of the board of directors, dated and acknowledged October 14, 1938, the board of directors made, appointed and designated A. J. Wilkinson, S. P. Bell and R. A. West "as, for and to be its Trustees, to be known as the Board of Trustees of Odd Fellows Home, with the rights, powers and duties" specified in the instrument which were identical with those specified in the resolution of the grand lodge. The instrument also provided for the conveyance by the Odd Fellows Home Endowment Board to the trustees of the real estate mentioned and described in the resolution of the grand lodge. The instrument further provided "That said Trustees, and their successors, shall become a corporation under the terms and

provisions of Code of West Virginia 35-2-6 * * * and shall be known by the name of 'The Board of Trustees of Odd Fellows Home.' ", and that, in addition to the powers conferred upon such trustees by statute and without diminishing or limiting such powers, the trustees should have the same power and authority mentioned and described in the resolution of the grand lodge. The instrument contained the same provisions mentioned and described in the resolution of the grand lodge with respect to the officers of the board and of any vacancies existing in the membership of the board. By an instrument also dated October 14, 1938, signed by the named trustees, they accepted the appointment and designation and agreed to be bound by the terms and conditions of the trust.

By resolution adopted by the Board of Directors of the Odd Fellows Home at a regular meeting on August 27, 1966, which provided for the amendment of three articles of the trust adopted October 14, 1938, the number of trustees was increased from three to five; and by an instrument in writing dated August 30, 1966, the secretary of the Board of Trustees of the Odd Fellows Home certified the adoption of the amendment and that Otway Gunnoe, P. K. Martin, R. A. Roller, John E. Lake, ex officio, and Earl Woodrum, ex officio, were the members of the board of trustees.

By an instrument in writing dated October 1, 1966 and signed by E. Ralph Clear, the Grand Master of the grand lodge, the action of the board of directors in adopting the resolution undertaking to amend the trust authorized by the resolution of the grand lodge in 1938 was disavowed and at the annual meeting of the grand lodge in Charleston on October 14, 1966, the grand lodge, by a resolution, undertook to amend the trust created pursuant to the resolution of the grand lodge of October 12, 1938, in certain particulars and also undertook to elect Meril E. Peak, Clinton W. Fiedler, Edwin C. Runner, Mike Casey and P. K. Martin as trustees in lieu of the trustees appointed by the Board of Directors of the Odd Fellows Home.

From the foregoing instruments it is clear that the trust involved in this proceeding and the Board of Trustees of the

Odd Fellows Home were created pursuant to the direction of the grand lodge in its resolution of October 12, 1938 by the Board of Directors of the Odd Fellows Home, a statutory corporation, and not by the grand lodge, and that the trustees composing the Board of Trustees of the Odd Fellows Home were appointed not by the grand lodge but by the Board of Directors of the Odd Fellows Home. The grand lodge was not a party to the trust, did not sign it, and was mentioned in it only by reference to the resolution adopted by the grand lodge on October 12, 1938. Under Section 6, Article 2, Chapter 35, Code, 1931, the board of trustees is a corporation and as such is governed by all the provisions of law relating to, and has and exercises all the privileges and powers of, a non-stock corporation. See *Board of Education of Walton District, Roane County v. Board of Trustees, Walton Lodge No. 132, I.O.O.F.*, 78 W.Va. 445, 88 S.E. 1099; *Hays v. Harris*, 73 W.Va. 17, 80 S.E. 827. The trust created by the Board of Directors of the Odd Fellows Home is a voluntary charitable trust and contains no reservation of the right to revoke or modify the trust by either the Board of Directors of the Odd Fellows Home, the creator of the trust, or the grand lodge at whose direction the trust was formed except the provision which authorizes the board of directors to fill vacancies in the membership of the board of trustees if more than one vacancy should exist.

In BOGERT, TRUSTS AND TRUSTEES, Second Edition, Section 392, the text contains this statement: "It is well settled that the creator of a charitable trust, unless he reserved to himself such a power, has no authority to alter the terms of the trust." With respect to changes in personnel, the same author in Section 532 of the same work, uses this language: "Unless an express provision is made, neither the settlor, the cestui, nor surviving trustees can make the appointment. * * *. Any power of appointment conferred by the trust instrument must be exercised strictly according to its terms." As to charitable trusts the rule as expressed in the RESTATEMENT (Second) OF TRUSTS 2d, Section 367, is that "If a charitable trust has once been validly created, the settlor cannot revoke or modify it unless he has by the terms of the trust reserved the power to do so." The same authority in Section 366 states that "A

charitable trust can be rescinded or reformed upon the same grounds as those upon which a private trust can be rescinded or reformed." It has also been held that in the absence of a reserved power, the donor and the donee can not alter or terminate a charitable trust. 14 C.J.S., *Charities,* Section 66; *Teachers Annuity and Aid Association v. Riggs National Bank of Washington, D.C.,* 278 F.2d 452; *Authors Club v. Kirtland,* 248 App. Div. 82, 288 N.Y.S. 916; *In Re Kulka's Estate,* 142 Or. 104, 18 P.2d 1036; *American National Red Cross v. Banks,* 265 Wis. 66, 60 N.W.2d 738. An exception to the general rule concerning revocation or modification of a charitable trust is that an applicable statute may permit or authorize revocation or modification of the trust. Another exception to the general rule, which is not applicable in this proceeding, is that in certain specific circumstances the creator of a charitable trust with the consent of the beneficiaries may revoke or modify the trust.

As to trusts in general it is well established that, except as otherwise provided by statute, a voluntary trust containing no reserved power of revocation or modification, can not be revoked or modified without the consent of the beneficiaries or the persons beneficially interested. 89 C.J.S., *Trusts,* Sections 87a and 88b. In 54 AM. JUR., *Trusts,* Section 68, the text contains this language: "It is a general rule that after a trust is completed and in force, it cannot be altered or amended without the consent of all the parties in interest, except under a reserved power of amendment or alteration." In BOGERT, TRUSTS AND TRUSTEES, Second Edition, Section 992, the text is: "The settlor has no power to modify the trust either as to dispositive or administrative provisions, if he did not expressly reserve such power in the trust instrument." In *Lamb v. The First Huntington National Bank,* 122 W.Va. 88, 7 S.E.2d 441, this Court held in point 3 of the syllabus that "A grantor in a deed to himself as trustee for the benefit of himself and others may not revoke the trust without the consent of the other beneficiaries, unless in the instrument creating the trust he reserved the power of revocation."

Section 4, Article 2, Chapter 35, Code, 1931, relating to trustees for educational, benevolent or charitable institutions,

contains, in part, these provisions: "The authorities of any university, college, academy, high school, seminary, or other institution of learning, or the authorities of any orphan asylum, children's home, house of refuge, hospital, or home or asylum for the aged or incurables or the afflicted in mind or body, or other benevolent or charitable institution or association, to which, or for the use of which, any property, real or personal, is conveyed, dedicated, devised, transferred, given or bequeathed, may from time to time, and whenever occasion may arise, appoint in such manner as any such authorities may deem proper, a suitable number of persons as trustees for any such institution or association, and may remove such trustees or any of them, and fill all vacancies caused by death or otherwise."

The authority referred to in the foregoing statute is the Board of Directors of the Odd Fellows Home, not the grand lodge as it contends it is. The resolution of the grand lodge directed the Board of Directors of the Odd Fellows Home to appoint the trustees, which it did, and it created the trust. The board of directors, as the authority mentioned in the statute, is authorized to appoint in such manner as it may deem proper a suitable number of persons as trustees for the Odd Fellows Home, which the board did, and it is also authorized to remove such trustees or any of them and to fill any vacancies caused by death or otherwise. Under that statutory provision the action of the board of directors, by its resolution of August 27, 1966, in increasing the membership of the board of trustees from three to five and in designating the president and the secretary of the board of directors as the two additional members, was valid and the Board of Trustees of the Odd Fellows Home is now composed of the defendants Otway Gunnoe, P. K. Martin, R. A. Roller as trustees and John E. Lake and Earl J. Woodrum as trustees ex officio and as president and secretary of the Board of Trustees of the Odd Fellows Home. The grand lodge, not being an authority under the statute and not being a party to that trust, was without authority to appoint the five trustees provided for in the resolution adopted by it on October 14, 1966 and the persons the grand lodge undertook to appoint, being the plaintiffs Meril

E. Peak, Clinton W. Fiedler, Edwin C. Runner, Mike Casey and the defendant P. K. Martin, are not duly authorized trustees or members of the Board of Trustees of the Odd Fellows Home.

Where a grand lodge of a benevolent, fraternal or charitable association authorizes and directs an incorporated board of directors of a home owned by the grand lodge to appoint trustees to be known as a board of trustees of the home and pursuant to such authority the board of directors creates a voluntary charitable trust and appoints members of a board of trustees of such home and does not reserve in such trust the power or authority to revoke or modify such trust except to authorize the board of directors to fill vacancies if more than one vacancy exists in the number of trustees, the grand lodge, not being a party to such trust or an authority mentioned in Section 4, Article 2, Chapter 35, Code, 1931, is without power or authority to revoke or modify such trust or to remove the trustees appointed by the board of directors or to appoint successors to the trustees appointed by the board of directors; but the board of directors, a statutory corporation, as an authority under the statute, has the power and authority to appoint such trustees in addition to those originally appointed as may be necessary to constitute a suitable number of persons as trustees and may remove such trustees or any of them and fill all vacancies caused by death or otherwise.

One of the errors assigned by the plaintiffs is the action of the circuit court in refusing to respect and vindicate the right of the grand lodge and the International Sovereign Grand Lodge as the highest state and national bodies of a voluntary association to determine, as a matter of internal organization policy, that the trustees elected by the grand lodge were the rightful trustees of the Board of Trustees of the Odd Fellows Home. There is no merit in this assignment of error.

The plaintiffs, including the grand lodge, have invoked the jurisdiction of the circuit court as a court of equity by the institution of this proceeding. It has long been recognized that the administration of trusts and actions and proceedings involving trusts are matters which in their nature are of

equitable cognizance within the exclusive jurisdiction of equity, except in so far as they have been brought within the jurisdiction of other courts by constitutional and statutory provisions; and a trust constitutes a well recognized original ground of equitable jurisdiction. 54 AM. JUR., *Trusts*, Section 3. Control and supervision of trusts is one of the well recognized branches of equity jurisdiction. 19 M.J., *Trusts and Trustees*, Section 129. In *Heiskell v. Powell*, 23 W.Va. 717, this Court said "Trusts are peculiarly within the cognizance of courts of equity." Moreover, property rights of the parties are involved in this proceeding which will enable a court of equity to intervene in the internal affairs of benevolent, charitable or fraternal associations. See 10 C.J.S., *Charities*, Section 66. Having jurisdiction of the subject matter of trusts, a court of equity will adhere to and apply the provisions of applicable statutes rather than the determination of the highest authoritative bodies in a voluntary benevolent, charitable or fraternal association when determination of such authoritative bodies is inconsistent, as here, with the law of this State.

As the trustees which the grand lodge undertook to appoint are not the rightful and valid trustees of the Board of Trustees of the Odd Fellows Home and are not entitled to receive and administer the property and assets in the custody of the defendants, who are the rightful trustees of the Board of Trustees of the Odd Fellows Home, the plaintiffs are not entitled to an accounting in this proceeding. Under the provisions of the trust the Board of Trustees of the Odd Fellows Home is required to account to the Board of Directors of the Odd Fellows Home and to the Odd Fellows Home Endowment Board neither of which is a party to this proceeding. If the present Board of Trustees of the Odd Fellows Home fails to make proper accounting to the proper person or organization such person or organization entitled to such accounting may require the Board of Trustees of the Odd Fellows Home to make a proper accounting in a proceeding instituted for that purpose.

The judgment of the Circuit Court of Cabell County is affirmed.

*Affirmed.*