In the Matter of the Accounting of CHARLES H. SANFORD et al., as Surviving Trustees under the Will of ALFRED H. DURSTON, Deceased. JESSIE B. DURSTON et al., Appellants; ELIZABETH C. ROBERTSON et al., Respondents.

Argued May 21, 1947; decided July 2, 1947.

*Colley E. Williams* and *Horace E. Whiteside* for Jessie B. Durston and others, appellants. I. The trustees' continued investment throughout the accounting period of funds in their own business enterprise was unauthorized by the terms of the will and was in violation of law. (*City Bank Farmers Trust Co.* v. *Cannon,* 291 N. Y. 125; *Matter of Stone,* 138 Ohio St. 293; *People* v. *Canton National Bank,* 288 Ill. App. 418; *Albright* v. *Jefferson County Nat. Bank,* 292 N. Y. 31; *Marcellus* v. *First Trust & Deposit Co.,* 291 N. Y. 372; *Matter of Ryan,* 291 N. Y. 376; *Matter of Roche,* 233 App. Div. 236, 245 App. Div. 192, 259 N. Y. 458.) II. The trustees' duty with respect to this security was greater than with others. (*Matter of Richardson,* 149 Misc. 192, 229 App. Div. 738; *Matter of Keane,* 95 Misc. 25; *Mills* v. *Hoffman,* 26 Hun 594, 92 N. Y. 181; *Strauss* v. *United States Fidelity & Guaranty Co.,* 63 F. 2d 174; *Matter of Scudder,* 21 Misc. 179; *Matter of Foster,* 218 Iowa 1202.) III. The trustees

were negligent as a matter of law in failing promptly to dispose of this investment. (*King* v. *Talbot,* 40 N. Y. 76; *Matter of Stumpp,* 153 Misc. 92.) IV. The sale by the trust company to this estate of the additional 475 shares of its own capital stock constituted a breach of trust and was illegal and in violation of the duties of the trustees to the estate. (*City Bank Farmers Trust Co.* v. *Cannon,* 291 N. Y. 125; *Central Hanover Bank & Trust Co.* v. *Russell,* 290 N. Y. 593; *Matter of Berges,* 30 D. & C. 549; *Matter of Stone,* 138 Ohio St. 293.) V. The trustees' retention of an undivided interest in real property was grossly negligent and constituted a violation of their fiduciary duties. (*Matter of Jackson,* 258 N. Y. 281; *Matter of Rowland,* 273 N. Y. 100; *Furniss* v. *Cruikshank,* 230 N. Y. 495; *Lawrence v. Littlefield,* 215 N. Y. 561; *Walbridge* v. *Brooklyn Trust Co.,* 143 App. Div. 502; *Matter of Schuster,* 257 App. Div. 55, 284 N. Y. 569.)

*Henry H. Bruce,* special guardian, for Barbara D. Smith and others, appellant. I. The retention of the original 712 shares of the trust company stock, the exercise of subscription rights and the investment in additional stock was illegal. (*City Bank Farmers Trust Co.* v. *Wylie,* 273 N. Y. 304; *Wendt* v. *Fischer,* 243 N. Y. 439; *Meinhard* v. *Salmon,* 249 N. Y. 458; *Matter of Roche,* 223 App. Div. 236, 259 N. Y. 458, 245 App. Div. 192; *City Bank Farmers Trust Co.* v. *Cannon,* 291 N. Y. 125; *Central Hanover Bank & Trust Co.* v. *Russell,* 290 N. Y. 593; *People* v. *Canton National Bank,* 288 Ill. App. 418; *Matter of Lewisohn,* 294 N. Y. 596; *Albright* v. *Jefferson County Nat. Bank,* 292 N. Y. 31; *Matter of Ryan,* 291 N. Y. 376; *Thruston* v. *Nashville & American Trust Co.,* 32 F. Supp. 929; *Pyle* v. *Pyle,* 137 App. Div. 568, 199 N. Y. 538.) II. The trustees were negligent in investing in the additional stock of the trust company and in retaining both the original and the additional stock throughout the accounting period. (*Litchfield* v. *White,* 7 N. Y. 438; *King* v. *Talbot,* 40 N. Y. 76; *Matter of Stumpp,* 153 Misc. 92; *Gould* v. *Gould,* 126 Misc. 54; *Matter of Richardson,* 149 Misc. 192, 229 App. Div. 738; *Matter of Markowitz,* 152 Misc. 1.) III. The trustees were negligent in retaining the real property in the trust. (*Lawrence* v. *Littlefield,* 215 N. Y. 561; *Furniss* v. *Cruikshank,* 230 N. Y. 495; *Matter of Jackson,* 258 N. Y. 281; *Matter of Pinkney,* 208 App. Div. 181, 238 N. Y. 602; *Matter of Hopkins,*

133 Misc. 554, 226 App. Div. 180; *Matter of Ziegler,* 256 App. Div. 305; *Matter of Schuster,* 257 App. Div. 55, 284 N. Y. 569.)

*George R. Fearon* and *M. Harold Dwyer* for Durston H. Sanford, as executor of Charles H. Sanford, deceased, respondent. I. There has been no self-dealing or violation of the rule against undivided loyalty on the part of the trustees. (*Matter of Clarke,* 257 N. Y. 132; *Matter of Balfe,* 245 App. Div. 22; *Matter of Baker,* 249 App. Div. 265; *Albright* v. *Jefferson County Nat. Bank,* 292 N. Y. 31; *Matter of Lewisohn,* 294 N. Y. 596; *Matter of Griggs,* 125 N. J. Eq. 73; *Merchants Loan Co.* v. *Trust Co.,* 250 Ill. 86; *Young* v. *Hood,* 209 N. C. 801; *Greenawalts Estate,* 343 Pa. 413.) II. The evidence amply supports the conclusion of the courts below that the trustees were not negligent in failing to sell the real estate. No question of law is presented in this respect. (*Matter of Blaustein* v. *Pan American Pet. & Transp. Co.,* 174 Misc. 601; *Matter of Winburn,* 140 Misc. 18; *North Adams National Bank* v. *Curtiss,* 278 Mass. 471; *Matter of Winburn,* 140 Misc. 18; *President and Directors of Manhattan Co.* v. *Williams,* 152 Misc. 901; *Matter of McCafferty,* 147 Misc. 179; *Matter of Andrews,* 239 App. Div. 32; *Matter of Wechsler,* 173 Misc. 802; *Matter of Rowland,* 273 N. Y. 100.) III. The conclusion of the courts below that the trustees were not negligent in failing to sell the trust company stock during the periods covered by the accounts is amply supported by the evidence. No question of law is presented on this issue.

*A. Van W. Hancock* and *William S. Estabrook* for The Syracuse Trust Company, respondent. I. Retention by the trustees of the 178 shares of the trust company stock received from the executors was proper. There was no divided loyalty in such retention. (*Matter of Riker,* 124 N. J. Eq. 228, 125 N. J. Eq. 349; *Matter of Paterson National Bank [Griggs],* 125 N. J. Eq. 73; *Matter of Cuddeback,* 168 Misc. 698; *Matter of Clark,* 257 N. Y. 132; *Matter of Weston,* 91 N. Y. 502.) II. The exercise by the trustees of their rights to subscribe to additional shares of the capital stock of the trust company was proper and justified. There was no self-dealing in the exercise of the stock rights by the three trustees. (*Matter of First National Bank of the City of New York [Baker],* N. Y. L. J., Feb. 6, 1941, p. 574; *Matter of*

*Vanderbilt,* 132 Misc. 150; *Merchants Loan Co.* v. *Trust Co.,* 250 Ill. 86; *Young* v. *Hood,* 209 N. C. 801; *Greenawalt Estate,* 343 Pa. 413; *Clay's Estate,* 25 Pa. D. & C. 257.) III. In exercising the stock rights the trustees acted as reasonably prudent men in similar circumstances. (*Chemical Bank & Trust Co.* v. *Renaud,* 150 Misc. 821, 239 App. Div. 904; *Matter of Hirsch,* 116 App. Div. 367, 188 N. Y. 584; *Matter of Hall,* 164 N. Y. 196; *Matter of Balfe,* 245 App. Div. 22; *Matter of Clark,* 257 N. Y. 132; *Matter of Tuttle,* 162 Misc. 286; *Matter of Pratt,* 143 Misc. 751.) IV. The trustees' retention of the 712 shares of the original stock and the 475 shares of stock of the trust company received from the exercise of the stock rights was proper. There was no divided loyalty. (*Matter of Weston,* 91 N. Y. 502; *Marshall Field Trust,* 250 Ill. 86; *Pettigrew's Estate,* 115 N. J. Eq. 401, 116 N. J. Eq. 566; *Westfield Trust Company,* 117 N. J. Eq. 29; *Matter of Parson,* 143 Misc. 368; *Matter of McKee,* 147 Misc. 889; *Matter of Andrews,* 239 App. Div. 32; *Great Northern Ry. Co.* v. *Weeks,* 297 U. S. 135; *Werk* v. *Parker,* 249 U. S. 130; *Muellar* v. *Oregon,* 208 U. S. 412; *Jay Burns Banking Co.* v. *Bryant,* 264 U. S. 404.) V. The *Cannon* case (291 N. Y. 125) and related cases are not decisive of the issues herein involved. VI. The delegation of administerial duties of the management of the real property and retention of the undivided interest in the real property by the trustees was proper. (*Matter of McDowell,* 102 Misc. 275.)

*John B. Tuck* and *John B. Tuck, Jr.,* for Elizabeth C. Robertson, as executrix of Edward L. Robertson, deceased, respondent. I. The trust clause gave to the trustees broad and extensive powers. II. There was no violation of law or abuse of discretion in retaining the trust company stock or exercising rights. (*Matter of Ryan,* 291 N. Y. 376; *Crabb* v. *Young,* 92 N. Y. 56; *Matter of Weston,* 91 N. Y. 502; *Central Hanover Bank & Trust Co.* v. *Russell,* 290 N. Y. 593; *Matter of Clark,* 257 N. Y. 132; *Matter of Balfe,* 245 App. Div. 22.) III. The exercise of rights to subscribe for additional shares in the trust company did not constitute a violation of the trust. (*Matter of Vanderbilt,* 132 Misc. 150; *Merchants Loan Co.* v. *Trust Company,* 250 Ill. 86; *Ballantine* v. *Young,* 79 N. J. Eq. 70; *Tower's Estate,* 253 Pa. 396; *Matter of First National Bank of the City of New*

*York* [*Baker*], N. Y. L. J., Feb. 6, 1941, p. 574.) IV. There is no proof of disloyalty to the trust. (*Matter of Kramer,* 172 Misc. 598; *Crabb* v. *Young,* 92 N. Y. 56; *Purdy* v. *Lynch,* 145 N. Y. 462; *Guaranty Trust Co. of N. Y.* v. *Fisk,* 244 App. Div. 200; *Costello* v. *Costello,* 209 N. Y. 252; *Matter of Andrews,* 239 App. Div. 32.) V. No possible charge of divided loyalty can be placed against the deceased trustee. (*Earle* v. *Earle,* 93 N. Y. 104; *Ormiston* v. *Olcott,* 84 N. Y. 339; *Wilmerding* v. *McKesson,* 103 N. Y. 329; *Matter of Whitmore,* 172 Misc. 277.) VI. There was no negligence or breach of trust in the handling of the real estate. (*Purdy* v. *Lynch,* 145 N. Y. 462; *Matter of Jackson,* 258 N. Y. 281; *Matter of Rowland,* 273 N. Y. 100; *Furniss* v. *Cruikshank,* 230 N. Y. 495; *Lawrence* v. *Littlefield,* 215 N. Y. 561; *Aerated Products Co.* v. *Godfrey,* 290 N. Y. 92; *Chaplin* v. *Selznick,* 293 N. Y. 529.)

THACHER, J. In *City Bank Farmers Trust Co.* v. *Cannon* (291 N. Y. 125) we stated the rule of undivided loyalty which, in the absence of statute, contrary directions in the instrument creating the trust, or *estoppel,* is applicable to retention or purchase of its own shares by a corporate trustee. The respondents urge that the rule of undivided loyalty there stated is not applicable here because the shares in the corporate trustee came to the trust from the estate of the testator and because of the broad powers granted to the trustees with respect to investments.

The testator died on October 5, 1926. His will read in part as follows: " I give, bequeath and devise all the rest, residue and remainder of my property, both real and personal, to Charles H. Sanford, Edward L. Robertson and The Syracuse Trust Company in trust, nevertheless, to hold, care for, manage and control the same, to sell and convert into money any part or all thereof, without the authorization or approval of any court, to invest or reinvest the same, or portions thereof, in such interest bearing or income producing securities or property as to the said trustees, in the exercise of their discretion, may seem best, with all the authority, and powers in connection with the same, I would possess, if living * * *.

" * * * in addition to the powers and authority herein conferred upon my said executors and trustees, I authorize and

empower my said executors to contract for the sale of, and to sell, with or without covenants of title, any and all of the real property or estate or interest therein, of which I shall die seized or the owner  *  *  * ''.

Testator's father was one of the subscribers to the original shares of the Trust Company and a member of the board of directors from 1906 to his death in 1921 with the exception of a two-year period. Upon his father's death the testator received 168 shares of the Trust Company from his estate, and, prior to receiving the 168 shares, had bought 10 shares.

On June 12, 1929, a reduction in the par value of the Trust Company's shares from $100 to $25 and a corresponding increase in the number of shares from 15,000 to 60,000 was authorized. At the same meeting an increase of the company's capital from $1,500,000 to $2,500,000 was authorized, and for this purpose 40,000 additional $25 par shares were to be issued. Thus for the 178 original shares ($100 par) the trustees became entitled to receive 712 shares ($25 par) and to subscribe for 474⅔ shares. A fractional right was purchased for $29 and the trustees subscribed for 475 additional shares, making a total of 1,187 shares which they now hold. For each of these additional shares they paid $75. There was a market for the sale of these subscription rights at a price which varied from $39.50 to $63. Judge Robertson advised that exercise of the subscription rights was proper and he and Mr. Sanford concurred with the Trust Company in deciding to exercise the rights. The subscription to the additional shares was made on September 30, 1929, and resulted in an overdraft of $18,723.56 in the trustees' account with the Trust Company. Five thousand dollars left with the executors by the Surrogate's Court for the purpose of taking care of disputed tax items was also used in payment of the subscription. Sales of securities sufficient to cover the balance of the overdraft were effected by January 31, 1930.

No dividends have been paid on the Trust Company's stock since 1933 and the value of the 1,187 shares at September 19, 1939, the close of the accounting period involved in this litigation, was $9,496 as compared with a book value of $114,864.

In view of the rule of undivided loyalty as applied to the retention or purchase of shares of stock in a corporate trustee,

one must, in order to authorize such transactions, find authority either in the statute or in the instrument creating the trust. In 1938 (L. 1938, ch. 356) the Legislature amended the Decedent Estate Law and the Personal Property Law by adding to section 111 of the Decedent Estate Law a new subdivision 6 reading as follows: " 6. No fiduciary shall be liable for any loss incurred with respect to any investment not eligible by law for the investment of trust funds if such ineligible investment was received by such fiduciary pursuant to the terms of the will, deed, decree of court, or other instrument creating the fiduciary relationship or if such ineligible investment was eligible when received, or when the investment was made by the fiduciary; provided such fiduciary exercises due care and prudence in the disposition or retention of any such ineligible investment ", and by adding a similar provision to section 21 of the Personal Property Law.

The transactions involved in the *Cannon* case (*supra*), and in this case occurred before the enactment of this statute. Consequently one must turn for authority, if any there be, to provisions of the testator's will under the terms of which the testamentary trust was created. The will contains no retention clause authorizing retention by the trustees of the Trust Company's shares or any other securities. Respondents emphasize the relationship of the parties and the broad grant of power denoted by the phrase " with all the authority, and powers in connection with the same, I would possess, if living ". These are broad words and it is claimed that no stronger could have been found to authorize the retention or purchase of securities as trust investments. The circumstances that the testator used these words with reference to the very shares of the corporate trustee forming part of his estate at the time of his death and named the corporate trustee and its president as two of his three testamentary trustees are urged in support of the interpretation of the language of the will as meaning that they should deal with these shares as he himself might have done. There is much force in this argument and if we were dealing with a simple contract it would perhaps prevail. But we are here dealing with the fundamental relationship between a trustee and the beneficiaries of the trust, which we have attempted to define in language which will permit no exception or departure from the rule of fundamental fidelity expressed in

*Meinhard* v. *Salmon* (249 N. Y. 458, 464); *Wendt* v. *Fischer* (243 N. Y. 439, 444); *Munson* v. *Syracuse, G. & C. R. R. Co.* (103 N. Y. 58, 74); *Dutton* v. *Willner* (52 N. Y. 312, 318), a rule which in *City Bank Farmers Trust Co.* v. *Cannon* (*supra*) we declared to have been designed " to obliterate all divided loyalties which may creep into a fiduciary relationship and utterly to destroy their effect by making voidable any transactions in which they may appear." (P. 132.)

The testamentary trust created a trust relationship, a trust administered under law by trustees governed and controlled by the fundamental duties and obligations of the legal status in which they were required to act. We may not infer from broad grants of power " to hold, care for, manage and control " the trust estate; " to sell and convert into money any part or all thereof  \*  \*  \*,  to invest or reinvest the same, or portions thereof, in such interest bearing or income producing securities or property as to the said trustees, in the exercise of their discretion may seem best ", that such authority was to be exercised without regard to the fundamental duties and loyalties imposed upon all trustees, and we must construe the language used in the same context — " with all the authority, and powers in connection with the same, I would possess, if living " — as a grant of wide power and discretion, to be exercised, however, in the manner and subject to the obligations and duties of trustees. If the testator intended that all these things could be done without regard to the fundamental rule of absolute loyalty and fidelity prohibiting any purchase or retention of securities involving a divided loyalty, the authority should have been stated. The discretionary powers granted were broad but still subject to the prohibitions laid upon all trustees. Although a power is conferred upon the trustee, he cannot properly exercise the power under such circumstances or to such extent or in such manner as will involve a violation of any of his duties to the beneficiary (*Carrier* v. *Carrier*, 226 N. Y. 114, 125–126; Restatement, Trusts, § 186, comment f).

It is contended by the executrix of the estate of Edward L. Robertson, who before his death was one of the trustees, that her testator's estate is not subject to a surcharge because his action in approving the retention of shares of the Trust Company and the acquisition of additional shares was entirely

disinterested and uninfluenced by any consideration other than the interests of the beneficiaries. That was true, but it is not questioned that he gave his approval to the retention of the shares of the Trust Company held by the testator and to the acquisition of additional shares as well. Under these circumstances his liability as a cotrustee concurring in and approving illegal investments may not be avoided because he was personally uninfluenced by the conflicting interests to which his cotrustees were subjected. The basis of his liability is found in his approval of and acquiescence in such investments which resulted in loss to the beneficiaries. When a cotrustee approves a prohibited investment and such losses result, his liability is clear (*Wilmerding* v. *McKesson,* 103 N. Y. 329, 339–340; *Matter of Myers,* 131 N. Y. 409, 420; *Croft* v. *Williams,* 88 N. Y. 384, 388–389; *Meldon* v. *Devlin,* 31 App. Div. 146, 162–163, affd. on certified questions covering other points 167 N. Y. 573; Restatement, Trusts, § 224, subd. [2], cl. [c]; 2 Scott on Trusts [1939 ed.], §§ 224, 224.4).

Attempt was made in this case to surcharge the trustees for failure to sell undivided one-third interests in certain real estate the value of which greatly depreciated during the depression years. These objections to the trustees' accounts were overruled in both courts below. The questions presented involved determinations of fact and we cannot say as a matter of law that the courts erred in overruling these objections.

In the brief of The Syracuse Trust Company there is a suggestion that, while the life beneficiary of the testamentary trust did not have a power of revocation as did the life beneficiary in the *Cannon* case (*supra*) nevertheless the life beneficiary, and through her the remaindermen, were estopped as fully as were the settlor and the beneficiaries claiming under her in the *Cannon* case. The point is not mentioned in the opinions below and we see no merit in it.

The orders should be reversed and the matter remitted to the Surrogate's Court for further proceedings in accordance with this opinion.

FULD, J. (dissenting). The principle of undivided loyalty — that a corporate trustee may not retain or deal in its own securities or otherwise occupy a position in which it has interests to serve other than the interest of the trust estate

(*City Bank Farmers Trust Co.* v. *Cannon,* 291 N. Y. 125, 131) — is firmly entrenched in our law. It prescribes an essential, an admirably essential, standard of conduct, but there is no doubt that a settlor may relax the rule and permit the trustee to deal with the trust property in such manner as otherwise might not be sanctioned. He may, for instance, expressly authorize his trustee to retain, or deal in, its own securities. Verbiage so explicit, however, is not demanded; the same result may be accomplished by other language, and here, I believe, the testator indicated his intent that his trustees be vested with such power.

The words chosen by the testator, as Judge THACHER acknowledges, confer truly broad powers of discretion upon the trustees, particularly the power *to exercise " all the authority, and powers in connection with the same, I would possess, if living "*. Neither the *Cannon* case (*supra*), nor any other case can effectively alter their breadth. Here, in addition, we have more than words to point the testator's intent. It also appears that the testator had participated in the affairs of The Syracuse Trust Company as a member of its board of directors; that he had owned and retained a block of its stock; that he had appointed two trustees in addition to The Syracuse Trust Company, one of them his own attorney of long standing, the other the Trust Company's president who was also his brother-in-law. Under such circumstances, the testator's choice of language certainly evinces an unmistakable intent that the Trust Company was not to be bound by the rule of undivided loyalty insofar as retention of, and dealing in, its stock were concerned. (See, e.g., Scott, Trustee's Retention of Its Own Shares, 57 Harv. L. Rev. 601, 608, *et seq.,* 616–617.)

The orders should be affirmed, with costs.

LOUGHRAN, Ch. J., CONWAY, DESMOND and DYE, JJ., concur with THACHER, J.; FULD, J., dissents in opinion; LEWIS, J., taking no part.

Orders reversed, etc.