In the Matter of the Accounting of CENTRAL HANOVER BANK AND TRUST COMPANY, as Executor of and Trustee under the Will of SAMUEL C. HILDRETH, Deceased, Respondent. MARY E. HILDRETH, Appellant.

Second Department, January 31, 1949.

*Edward Lazansky* and *Frederick L. Kane* for appellant.

*Francis S. Bensel, Albert Stickney* and *Arthur W. Siegrist* for respondent.

*Per Curiam.* This is a proceeding for the settlement of respondent's accounts as executor and trustee of the will of decedent, who died on September 24, 1929. Appellant is the decedent's widow and the sole legatee, except for a trust for the benefit of decedent's sister during her lifetime, which sister survived the decedent but has since died, and of which trust the widow is the sole remainderman. She appeals from a decree of the Surrogate's Court of Queens County, entered the 13th day of July, 1945, settling the said accounts, and confirming and ratifying a certain agreement between respondent and appellant, dated February 24, 1931, purporting to settle an accounting by respondent, as executor, for the period up to November 5, 1930, and from two orders and also from two decisions, which are described in the notice of appeal as " orders ".

At the times that respondent, in its capacity both as executor and as trustee, allotted to the estate and to the trust the mortgage participation in question, which it itself owned, in the year 1930, and prior to November 5th of that year, subdivision 7 of section 188 of the Banking Law, as amended by chapter 385 of the Laws of 1917, then in force, conditioned the legality of such investments upon respondent's giving prompt notice thereof to each person " entitled to the income therefrom ". The requirement was not only that the notice state that the investments were in mortgage participations, but that they were self-dealing transactions. (*Matter of Ryan*, 291 N. Y. 376, 408.) Respondent failed to give such notice, unless it be found in the account which it rendered, as executor, to appellant, in November of 1930, about nine months after the first investment and more than six months after the last; or in two statements sent by it to decedent's sister, the first dated March 25, 1930, and the second in September of 1930, after the investment of the trust fund on February 8, 1930. In that account, the investments were described as mortgage participations, but the fact of self-dealing was not disclosed and it may not be said that there was compliance as to promptness. Neither statement to the sister disclosed the self-dealing; the first did not state that the mortgage investment was only a participating interest, and at least the second statement was not prompt.

Appellant's objections to the accounts, insofar as these illegal investments are concerned, were not barred by the purported release of February 24, 1931, because neither appellant nor the attorney who examined the account and release at that time, on her behalf and at her request, and who advised her as to the legal import of the documents, were apprised of the self-dealing and the rights which accrued to her in connection with the investments by reason thereof. (See *Matter of Ryan, supra*; *Matter of Hoyt*, 294 N. Y. 373; *Matter of Lewisohn*, 294 N. Y. 596; *Adair* v. *Brimmer*, 74 N. Y. 539; *Matter of Young*, 249 App. Div. 495; *Matter of Ungrich*, 115 Misc. 762.) *Matter of Schoenewerg* (277 N. Y. 424) is not to the contrary. In that case, as distinguished in *Matter of Lewisohn* (*supra*, p. 609), " the condition of the there challenged investment was manifest upon the face of an accounting which the trustee had delivered to the objector." In any event, the agreement by its own terms did not affect respondent's liability as trustee.

The fact that appellant took no affirmative action to surcharge respondent and raised the issue only upon respondent's application in the year 1939, for settlement of its accounts, does not estop her. She notified respondent as early as the year 1932,

that she was not satisfied with the investments, and the only evidence of disclosure of the self-dealing, prior to the accounting in 1939, was that the attorney who had participated in appellant's behalf in the transaction involving the execution of the release in 1931, learned of it in 1934. Since respondent knew of appellant's dissatisfaction in 1932, it had no right to expect that appellant would ultimately relax her position, and its own position was not changed.

Insofar as respondent's commissions are concerned, they should not be disallowed in general, since actual bad faith on its part was not established. (See *Matter of Frame,* 245 App. Div. 675, 688; *Matter of Welling,* 51 App. Div. 355, 358; *Matter of Taft,* 145 Misc. 435, and authorities there cited.)

However, commissions should have been denied as to certain specific transactions. They should have been disallowed upon the sale price of the Stromboli farm to the extent of the amount in excess of net amount realized, after deduction for adjustments or any other expenses in connection with the sale. They should not have been allowed on the valuation of the General Electric and Crucible Steel stock as of the date of decedent's death, but rather as of the date they were taken into respondent's possession as executor. (See *Matter of Fellowes,* 272 App. Div. 1007; *Matter of Brann,* 148 Misc. 310.) No commissions should have been allowed on the amount of the note payable by Jamaica Consolidated Copper Co. The note was never collected and remains but a chose in action. (See *Matter of James,* 261 App. Div. 480; *Matter of Freeman,* 105 Misc. 423, 426; *Matter of Keane,* 97 Misc. 213, 219–220.) Respondent did not participate in the management of the Stromboli farm, and no commissions on the amounts of income and expenditures in the operation of the farm should have been allowed, despite the device on March 26, 1930, of having appellant give respondent a check in the amount of $12,609.69, representing income up to that time, and respondent giving appellant a total of $13,571.45 to reimburse her for the expenses. Finally, respondent's taking of commissions in the amount of $20,820.96 on November 5, 1930, before settlement of any account, was premature, and respondent should be surcharged interest from the time of the taking to the time of the making of the agreement on February 24, 1931, at the rate of 4%. However, in computing this surcharge, no interest should be included on any part of these commissions, which, for other grounds stated in this opinion should be returned, and upon which interest will be computed separately.

In view of our holding that respondent should be surcharged on account of the self-dealing mortgage participation invest-

ments, and in other respects, respondent's attorneys' fee, in defending its illegal acts, should not be charged to the estate. However, these attorneys did render services in connection with the accountings other than in such defense, and upon matters which have not resulted in surcharge or correction either in the Surrogate's Court or upon this appeal. For these services, a fee of $10,000 should be allowed, payable out of the estate, which amount, in our opinion, is fair and reasonable. The expenses of the referee's fee, the services of the stenographer at the hearings, and other items incurred by reason of the litigated issues, although payable out of the estate, should be surcharged to respondent.

The decree, and the order of October 19, 1943, denying appellant's motion, upon reargument, to overrule or modify the referee's report, should be reversed on the law and the facts, with costs to appellant, payable by respondent personally, and the matter remitted to the Surrogate's Court for appropriate proceedings for settlement of respondent's accounts as executor and trustee, in accordance with the views hereinabove set forth.

The appeals from the decisions dated, respectively, December 23, 1942, and January 23, 1945, should be dismissed, without costs, as not appealable. The appeal from the order made June 10, 1943, should be dismissed, without costs. Since reargument of the motion determined by that order was granted, culminating in the said order of October 19, 1943, it also is not appealable.

CARSWELL, Acting P. J., JOHNSTON, ADEL, SNEED and WENZEL, JJ., concur.

Decree of the Surrogate's Court, Queens County, and order dated October 19, 1943, denying appellant's motion, upon reargument, to overrule or modify the referee's report, reversed on the law and the facts, with costs to appellant, payable by respondent personally, and the matter remitted to the Surrogate's Court for appropriate proceedings for settlement of respondent's accounts as executor and trustee, in accordance with the views set forth in the opinion *Per Curiam* herein.

The appeals from the decisions dated, respectively, December 23, 1942, and January 23, 1945, are dismissed, without costs, as not appealable.

The appeal from the order dated June 10, 1943, is dismissed, without costs. Since reargument of the motion determined by that order was granted, culminating in the said order of October 19, 1943, it also is not appealable. [See 275 App. Div. 718.]