In the Matter of the Accounting of CENTRAL HANOVER BANK AND TRUST COMPANY, as Trustee under a Trust Agreement Created by WALTER S. SCHLUSSEL, as Settlor.

Supreme Court, Special Term, New York County, November 24, 1952.

*J. Culbert Palmer* and *Arthur J. X. Hines* for trustee, petitioner.

*Henry Hofheimer, Claude L. Gonnet* and *Henry Hofheimer, Jr.,* for Walter S. Schlussel, as settlor, and another, respondents.

*Nathaniel L. Goldstein, Attorney-General* (*P. Hodges Combier* of counsel), in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law, respondent.

HOFSTADTER, J. The petitioner, now known as the Hanover Bank, has instituted this proceeding for the settlement of its accounts as trustee under a trust created on March 28, 1921, by Walter S. Schlussel as settlor. Shortly after the commencement of the present proceeding the settlor himself brought one for the revocation of the trust, asserting that the same had been effectively revoked by an instrument executed by him, fortified by the written consents of his wife, with him a life beneficiary, of his brother and sister and of the Attorney-General of the State of New York, as the representative of indefinite and uncertain charitable beneficiaries, the remaindermen. Following this court's decision upholding the efficacy of the Attorney-General's consent given on behalf of the charitable beneficiaries (*Matter of Schlussel* [*Central Hanover Bank & Trust Co.*], 195 Misc. 1008), a final order was made declaring the trust to have been revoked on January 11, 1949, and directing the trustee to file in the pending intermediate accounting proceeding its final account by supplementing the accounts previously filed. The trustee has complied with such order and accordingly the present proceeding has become one for a final accounting of the petitioner as trustee of the revoked trust.

Three accounts are before the court, the first covering the period from March 28, 1921, the date of the inception of the trust, to July 3, 1940; the second for the period from July 3, 1940, to November 18, 1948; and the third for the period from November 18, 1948, to June 22, 1949. For convenience, that covering the period from 1921 to 1940 will be referred to as the first account. Answers with objections were filed to the accounts by the settlor and his wife (referred to as the Schlussels) and by the Attorney-General on behalf of the unnamed charitable beneficiaries. The court appointed Harold S. Lazar, Esq., Referee to take testimony and report with his opinion on the issues so raised and the Referee's report, based on extensive examinations before trial, testimony and exhibits, is now before the court for action. The Referee in a comprehensive and

illuminating opinion recommends the dismissal of all the objections and, though the adoption of this recommendation would necessarily exonerate the trustee, the latter nevertheless takes exception to certain findings of the Referee. The objectants on their part rest on some of the Referee's findings but challenge his ultimate conclusions. The questions posed for decision are important.

The first account was prepared by the trustee in the summer of 1940. This is a formal verified account, supported by completely detailed, itemized schedules in the form in which a trustee's accounting is usually presented to the court for approval. Copies of this account were submitted to Walter S. and Violet C. Schlussel, the settlor and his wife, on August 22, 1940. Prefixed to this account was a release agreement approving it, discharging the trustee and waiving a judicial accounting. On January 29, 1941, the Schlussels executed and acknowledged the release agreement.

Many of the present objections interposed by the Schlussels and joined in by the Attorney-General are directed at investments shown in this first account. Some of these investments also appear in the two later accounts. The trustee argues that the release concludes the Schlussels on all the transactions recorded in the first account and also forecloses any right again to assert the same objections to these transactions merely because the investments with which they were concerned still appeared in the later accounts as on hand or otherwise to have been dealt with. The Schlussels challenge the binding effect of the release on the ground that the trustee failed to make that full disclosure which the law demands. At the very threshold of our inquiry we must pass on these conflicting contentions, for, obviously, the determination of many of the issues on the accounting hinges on the validity of the release.

It is not open to question that a release given by a *cestui* to a trustee, based upon an account and complete disclosure of everything material which has occurred during the period of the account, is a final approval which forbids later complaint with respect to the items embraced in the account (*Matter of Schoenewerg,* 277 N. Y. 424). In the absence, however, of such full and frank disclosure, the release does not bar inquiry into the trustee's stewardship or the imposition of liability for breach of his fiduciary duty (*Adair* v. *Brimmer,* 74 N. Y. 539, 553; *Matter of Ryan,* 291 N. Y. 376, 417). Was the Schlussel release tainted with this infirmity? This inquiry leads to a study of the relevant facts.

It is undisputed that during its administration of the Schlussel trust the trustee invested some of the trust funds in part interests in bonds and mortgages, commonly known as participations, where the loans had been made and the bonds and mortgages held by the trustee. Under subdivision 7 of section 188 of the Banking Law (in effect from 1917 to 1936), a trust company was permitted to invest trust funds in such mortgage participations, but was required promptly to notify each income beneficiary of full age and sound mind " of the fact that such investment has been made ". The objectants claim that the trustee failed to give the required statutory notice of its investment in the mortgage participations and that this failure makes the investments themselves unlawful.

The trustee maintained an account known as " Trust No. 1 " or " T-1 " through which it conducted its mortgage participation operations. It paid for the mortgages with its funds and held the bonds and mortgages in its name. On the acquisition of a mortgage it was placed in the " T-1 " account, from which participations in varying amounts were allotted and sold to trusts of which the petitioner was trustee, at par and interest. Participations were also repurchased by the trustee from trusts and afterwards sold to other trusts administered by the trustee as occasion demanded. Usually these transactions passed through the " T-1 " account, though at times participations in mortgages acquired by the trustee were placed directly in the trusts and also sold from one trust to another under its administration, without clearing through the " T-1 " account. The record ownership of the mortgages themselves was, however, in all instances, in the trustee.

From this recital it is clear that the trustee's investment of the Schlussel trust in participations in mortgages paid for with the trustee's funds and held in the trustee's name constituted self-dealing (*Matter of Hildreth*, 274 App. Div. 611, affd. 301 N. Y. 705; *Matter of Ryan*, 291 N. Y. 376, *supra*). True, it was a form of self-dealing permitted by statute, if carried out as prescribed by the statute. But, it was self-dealing none the less. The 1941 release executed by the Schlussels could not give the trustee immunity from liability incurred through such self-dealing unless the same was frankly disclosed to them. " If dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all its stark significance." (*Wendt* v. *Fischer*, 243 N. Y. 439, 443.) This rule has been enforced uniformly in determining

the effect of a release or of a decree settling a trustee's account (*Matter of Lewisohn,* 294 N. Y. 596, 608–609; *Matter of Ryan, supra,* pp. 416–417; *Matter of Long Is. Loan & Trust Co.* [*Garretson*], 92 App. Div. 1, 4, affd. on opinion below 179 N. Y. 520; *Matter of Bausch,* 280 App. Div. 482, 490).

The mortgage participations allotted to the Schlussel trust by the trustee are reported in the appropriate schedules of the first account. Nowhere in this account, however, is it stated that these participations had been sold to the trust by the trustee itself. The self-dealing, whether permitted or not, is not revealed. It follows that the Schlussels are not concluded by the release, unless the self-dealing had been brought home to them in some other way before they executed the release.

We are thus brought to the question whether the Schlussels when they executed the release had obtained notice of the self-dealing from other sources. It is urged by the trustee that it gave the statutory notice and that this notice informed the Schlussels of the self-dealing. The Referee has reported that notice of the investment in five designated participations was given, but that, for reasons to be adverted to, the notice did not satisfy the statute. The Referee has reported further that while he was not satisfied that notice of the purchase of the remaining participations had been given, he did not consider it necessary to make a specific finding on this issue, because admittedly none of the notices claimed by the trustee to have been sent differed in form or content from the five notices already mentioned. Whether sent or not, they were no better than the five pronounced insufficient.

It is now settled that the notice of investment required by subdivision 7 of section 188 of the Banking Law must inform the trust beneficiary of the self-dealing and that, if this is omitted, the notice is ineffective (*Matter of Ryan, supra,* pp. 408–409; *Matter of Hildreth,* 274 App. Div. 611, affd. 301 N. Y. 705, *supra*). The Referee has in his report reproduced a form of the printed notice sent to the Schlussels. Scrutiny of the same persuades me that it does not inform its recipient that the participation was acquired from the trustee itself, whether in its individual or in a representative capacity. There is thus no disclosure of self-dealing. Accordingly, whether notice was given in each instance or not, because of this omission it failed in any case to comply with the statute.

Nor did the periodic principal and income statements sent to the Schlussels inform them of the self-dealing which underlay

the participation transactions. These statements are substantially identical with those declared in the *Ryan* and *Hildreth* cases not to give the necessary information. Since the papers already discussed fail to make the essential disclosure and there is no evidence of any other source through which the Schlussels were informed of the self-dealing, it must be concluded that when they delivered the 1941 release, they were without knowledge of it. As a result, this release is, under the authorities, no obstacle to their right now to press the objections to the mortgage participations and to have the trustee surcharged for the losses sustained on them.

The failure to make the necessary disclosure operates in a dual way. It removes the bar of the 1941 release and at the same time makes manifest the trustee's failure to give the notice prescribed by the statute. In the absence of notice, the investment in the participations becomes prohibited self-dealing which the *cestuis* may at their election disaffirm (*Matter of Ryan, supra; Matter of Hildreth, supra*).

This ruling applies equally to the participations which the trustee sold to the Schlussel trust from other trusts which it was also administering. The statute (Banking Law, § 188, subd. 7; L. 1917, ch. 385) read: " Investments in bond and mortgage by any such corporation as  *  *  *  personal or testamentary trustee,  *  *  *  may be made by apportioning to any estate or fund held by such corporation in any of such capacities a part interest in a bond and mortgage held by or in the name of such corporation, individually or in any representative capacity, and any such part interest may be repurchased at its face value by such corporation individually or in any representative capacity; but such bond and mortgage shall be a legal investment for trustees under the laws of this state and the records of such corporation shall at all times show every interest in the said bond and mortgage and any part interest in such bond and mortgage so apportioned shall at all times be and remain at least equal in lien to any other interest therein and such corporation shall promptly notify each person of full age and sound mind entitled to the income therefrom of the fact that such investment has been made."

The statute thus makes no distinction between mortgages held by the trust company " individually " and those held " in any representative capacity ". It permits the apportionment to any estate or fund of a part interest in a bond and mortgage held by the trust company " individually or in any representa-

tive capacity ''. Similarly it permits the repurchase of '' any such part interest '' — that is, a part interest theretofore apportioned to an estate or trust — by the trust company '' individually or in any representative capacity ''. The statute deals indiscriminately with all participations, whether held by the trust company in its individual or in a representative capacity. By the clear command of the statute the trustee is directed promptly to notify the income beneficiary '' of the fact that such investment has been made '' — obviously when the part interest is placed in the particular estate or fund, whether by way of original apportionment or of repurchase. Not alone is this the plain language of the statute, but it is its only reasonable interpretation. For, it would be utterly unthinkable that the Legislature, in granting trust companies the limited privilege of engaging in a form of self-dealing theretofore not allowed, intended to give them an unrestricted license to traffic in participations, without notice to the beneficiaries of the estate or fund affected, provided only that the statutory notice had been given when the participation was first apportioned to an estate or fund. The participations sold to the Schlussel trust from other trusts are, therefore, in the same category as those initially allotted to that trust and equally open to attack.

The objectants urge that the trustee was guilty of willful misconduct and actual bad faith in the handling of the bond and mortgage on the property at 807 Fifth Avenue, occupied by the Knickerbocker Club. The Schlussel trust held two participations in this mortgage on which no loss of principal but only a partial loss of interest was sustained. The charge arises from the circumstance that the record title to the club's property was held by three trustees appointed and subject to removal by the club's board of governors, and that two of these trustees, who were, of course, members of the club, were also trustees of the trust company and one of them president. There is, however, no proof that these individuals had any financial interest in the club's real estate or participated on behalf of either the bank or the club in the mortgage transactions. In the circumstances, it is pure surmise what part, if any, they played in the matter. This is too tenuous a basis for a finding of duplicity. The trustee must, of course, be surcharged with the loss of interest on these participations, but only because of the failure to give the statutory notice.

Another mortgage transaction requires special comment. In 1912 the trustee's predecessor, Union Trust Company, invested $16,000 in a mortgage on 73 West 68th Street and this mortgage until its later foreclosure was held throughout by the predecessor and the present trustee in their respective individual names. Upon the original placing of this mortgage, it was apportioned among three trusts, one, that under the will of Israel Corse, in accordance with the practice then followed and recognized in *Matter of Union Trust Co. (Hoffman)* (219 N. Y. 514). Eventually the Corse trust bought the other two participations and in 1922 was the beneficial owner of the entire mortgage then reduced to $11,000. In 1922 this $11,000 mortgage was transferred from the Corse to the Schlussel trust and in 1923 the mortgage on this property was increased to $15,000 — and the additional $4,000 placed in the Schlussel trust. Thus, at this point the Schlussel trust owned the beneficial interest in the entire mortgage, though the mortgage itself was, as noted, held in the trustee's individual name. In 1930 the mortgage was again increased from $15,000 to $20,000, the additional $5,000 being apportioned to another trust. There has been a substantial principal loss on this mortgage.

In one of the schedules of the first account this mortgage is designated a participation, while in another schedule it is designated as a mortgage. The Schlussels charge that this was a whole mortgage and that its misdescription in the schedule was purposeful to conceal its true nature, because self-dealing in whole mortgages has always been unlawful (*Matter of Ryan, supra,* pp. 398–404). Study of the record does not bear out this charge of bad faith. The mortgage was apparently always treated as a participation, possibly due to the apportionment of interests in it to three separate trusts at the time of its original acquisition. Having so treated it, however, the trustee may not be heard to say now that it is not subject to the rules governing participations. It follows that when this mortgage was first placed in the Schlussel trust, the trustee was required to give the statutory notice with full disclosure, notwithstanding that the beneficial interest was transferred from the Corse trust and not from the trustee individually. It certainly may not be argued successfully that, though the trust company must give the statutory notice when it transfers a part interest from one trust to another, it need not do so when it transfers the beneficial interest in an entire mortgage standing in its individual name.

Moreover, when this 73 West 68th Street mortgage was increased in 1930 from $15,000 to $20,000, the interest of the Schlussel trust became a true participation. At that point, at all events, if not before, the giving of the statutory notice became obligatory. There is no evidence of any disclosure of self-dealing in respect of this investment. What has already been said regarding the participations applies equally to this transaction and the trustee must be surcharged for the loss sustained on it.

It is, however, earnestly argued by the trustee that it is not subject to surcharge because of certain exculpatory clauses of the trust instrument. These are the material portions of the clauses relied on:

" *Second:* \* \* \* and shall invest and re-invest any moneys or funds on hand from time to time in its own judgment and discretion; \* \* \* "

" *Fourth:* The trustee of the trust hereby created shall have complete title to and full charge and control of the property transferred to or from time to time vested in it hereunder, and may proceed in the execution and performance of its duties and trusts without the direction of or authority from any court."
\* \* \*

" The trustee may make investments outside of those especially permitted by law. In investing any moneys or funds belonging to the trust estate on hand at any time, the trustee is hereby especially authorized to make any investments it considers advisable of any nature whatsoever, irrespective of such as are especially permitted by law."

" *Fifth:* The trustee shall not be liable for mistakes in judgment, or shrinkage or depreciation in value, of any investments or securities retained, held or purchased by it, nor for any other loss, unless the same shall happen through its own willful default."

The Referee sustained this contention on the authority of *Matter of Kramer* (172 Misc. 598); *Matter of Clark* (165 Misc. 801), and *Matter of Balfe* (245 App. Div. 22) and his dismissal of all the objections rests very largely on this view. In my opinion the contention so made by the trustee must be rejected. There is no need to analyze the cases cited, for they were all decided before the Court of Appeals in the *Ryan* and *Hildreth* cases held that the investment of trust funds in part interests in mortgages held by the trustee is a form of self-dealing, permitted only because of the statute and to the extent and on the terms prescribed by the statute. When the statute is not

complied with, the statutory grace is lost and the case becomes a simple one of prohibited self-dealing by a fiduciary.

With this established premise we consider the so-called exculpatory clauses. They must be read in light of the principle that an instrument will not be construed to authorize a trustee to occupy a position of divided loyalty or to deal on his own behalf with the trust property unless the instrument clearly expresses the purpose to give such power. The grant of such broad and unusual authority, hostile to the elementary and fundamental duty of every trustee, that of fidelity to his trust alone, will not be inferred from general or equivocal language (*Matter of Hubbell*, 302 N. Y. 246, 255; *Matter of Durston*, 297 N. Y. 64; *Carrier* v. *Carrier*, 226 N. Y. 114, 125). In *Matter of Durston* (*supra*) the will gave the trustees " all the authority, and powers in connection with the same, I would possess, if living." This broad and almost unlimited grant of power to three trustees, of whom one was a corporate trustee and another its president, was held nevertheless not to authorize the retention of stock in the corporate trustee forming part of the trust. Once it is admitted, as the recent cases have ruled, that the transactions under attack are self-dealing, however well-intentioned and free from gain, the futility of building a defense for the trustee on the quoted clauses becomes self-evident. The exacting standards to which our courts have ever held trustees are not to be whittled away so easily.

The trustee's contentions that its self-dealing was only technical and not with a view to profit, that the " T-1 " account was maintained solely for convenience, that in dealing with itself as trustee of other trusts it was dealing with a different legal person, require no extended comment. The situation is so similar to that in *Matter of Hildreth* (*supra*) that the *Hildreth* case must be accepted as controlling here. The other arguments on behalf of the trustee have all been considered, but they do not justify a different result. The trustee must accordingly be surcharged with the principal losses on the mortgage participations. The trustee must likewise be surcharged with the loss of income on the participations, being the difference between the interest received and 4%, which is considered the average earning on trust funds during the periods involved. The income surcharge will be solely in favor of the Schlussels, the income beneficiaries of the trust.

Other objections may be disposed of briefly. Since the trustee is to be surcharged on the mortgage participations, it becomes academic whether the handling and sale of the underlying prop-

erties, after the foreclosure of the mortgages in which the trust had part interests, was proper. The Referee has reported that for the most part there was no proof or insufficient proof in support of these objections. The court adopts this recommendation of the referee. The Referee has found that the trustee was negligent in disposing of two of the properties, but that since the trustee was not guilty of willful default, dishonesty or bad faith, it is protected by the exculpatory clauses. For the reason already stated, it is unnecessary to decide this issue; in any case, the exculpatory clause gives immunity here (*Benton* v. *Safe Deposit Bank*, 255 N. Y. 260).

The court adopts the referee's recommendation that the objection based on the sale of the railroad securities be dismissed. Both under the principles enunciated in *Matter of Clark* (257 N. Y. 132) and by reason of the exculpatory clauses, there is no tenable basis for this objection.

There is no proof of bad faith on the trustee's part; accordingly commissions should not be denied it (*Matter of Hildreth*, 274 App. Div. 611, 615, affd. 301 N. Y. 705, *supra*). The Referee also properly recommends the dismissal of the objections to the attorneys' fees, moderate in amount and incurred in the normal administration of the trust.

In view of the ruling that the Schlussels are not barred by the 1941 release from attacking the first account, there is no need to determine whether, had the ruling been otherwise, the Attorney-General, who did not join in the release, would have independent standing to maintain his objections to that account, despite his consent on behalf of the charitable beneficiaries represented by him to the revocation of the trust. His objections, which are confined to principal transactions, are therefore sustained to the extent that like objections of the Schlussels have been sustained.

Accordingly, the Schlussel objections 14, 15, 16, 17, 18, 19, 20, 21 and 23, to the first account are sustained to the extent stated. Objections 22 and 24 to this account are dismissed. Schlussel objections 1, 2, 3, 5, 8, 9, 10, 11, 12 and 13 to the second account, and objections 1, 3, 4, 5, 6 and 7 to the third account are sustained to the extent stated. Their objections 4, 6 and 7 to the second account and objection 2 to the third account are dismissed. Since the Attorney-General has substantially joined in the Schlussel objections, like disposition of his objections is made.

All questions of allowances and the costs of the reference will be passed on in the order hereon. Settle order.